UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| YEVGENIY KAPELEVICH, | ) | No. 16 B 5361 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ALEXANDER MITROFANOV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 A 287 |
| | ) | |
| YEVGENIY KAPELEVICH, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court for ruling in this adversary proceeding are two motions from Alexander Mitrofanov: one to vacate an order imposing sanctions against him for violating the final pretrial order, the other to vacate the judgment against him that resulted from the sanctions order. For the reasons that follow, both motions will be denied.

### 1. Background

A Texas resident, Mitrofanov is – or, more accurately, was – the plaintiff in the adversary proceeding. In his complaint, filed on May 5, 2016, he alleged that defendant Yevgeniy Kapelevich owed him a debt nondischargeable under sections 523(a)(2)(A) and (a)(6) of the Bankruptcy Code, 11 U.S.C. §§ 523(a)(2)(A), (a)(6). At the time Mitrofanov filed the adversary proceeding, he was represented by attorney Eugene I. Turin.

After Kapelevich answered, the court set December 9, 2016, as the discovery cutoff. At a status hearing held on December 9, a status hearing at which only Turin appeared, the court set the adversary proceeding for trial on March 9, 2017. The date was set at Mitrofanov's request.

On December 13, 2016, the court entered a final pretrial order in the form it customarily uses. (Adv. Dkt. No. 15). The final pretrial order contained the trial date and also set dates on which pretrial materials had to be filed. It required each party to file and exchange a list of witnesses and a list of exhibits to be introduced at trial. (*Id.* ¶¶ 4-5). It required the parties to exchange the exhibits themselves. (*Id.*). And it required the parties to deliver copies of the lists and exhibits to chambers. (*Id.*). All of this had to be done no later than 21 days before trial (*id.*) – in other words, no later than February 16, 2017. The court's CM/ECF system sent the final pretrial order electronically to counsel for both sides.

On January 20, 2017, Turin moved to withdraw as Mitrofanov's counsel, citing "irreconcilable differences" with his client. Turin sent the motion to Mitrofanov by regular mail at his Texas address. The motion was presented two weeks later, on February 3, 2017, and was granted. Mitrofanov filed no objection to the motion and did not appear at the hearing. Neither did any replacement counsel.

Time continued to pass, and no new counsel appeared for Mitrofanov. The February 16 deadline for pretrial materials came and went. No pretrial materials were filed by either side, Mitrofanov or Kapelevich, nor was any extension to file them sought.

The final pretrial order not only set deadlines for pretrial materials, it also made clear that failing to file them would have consequences. The order declared that a failure to comply with its terms "*will* result in the impositions of appropriate sanctions." (Adv. Dkt. No. 15 at ¶ 10

(emphasis in original)). Those sanctions were described. Failure to file and exchange the list of exhibits and failure to exchange the exhibits themselves would preclude a party from introducing any exhibits into evidence at trial. (*Id.* ¶ 10.a). Failure to file and exchange the list of witnesses would preclude a party from presenting any witnesses at trial. (*Id.* ¶ 10.b).

By March 1, the parties were almost two weeks late with their pretrial materials, and the trial was only one week away. Nothing had been heard from either side. Although Turin had withdrawn more than a month earlier, Mitrofanov still had not hired new counsel.

With the trial date looming and no pretrial materials on hand, the court enforced its final pretrial order and on March 1 entered an order imposing sanctions on both sides. (Adv. Dkt. No. 22). In accordance with the final pretrial order's terms, both Mitrofanov and Kapelevich were barred from introducing evidence at trial. Because neither side was able to introduce evidence, the trial date was stricken, and judgment was entered in favor of Kapelevich, the defendant. (Adv. Dkt. No. 23). Copies of the sanctions order and judgment were sent to Mitrofanov. The adversary proceeding was closed.

On March 2, the next day, Mitrofanov moved through new counsel to continue the trial date. Because the trial date had been stricken, that motion was denied. A week after that – fourteen days after the judgment – Mitrofanov filed two separate but substantively identical motions under Rule 59(e) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 59(e) (made applicable by Fed. R. Bankr. P. 9023). One sought to vacate the sanctions order; the other sought to vacate the judgment.

## 2. Discussion

Both motions will be denied. The sanctions order was entirely proper, well within the

court's discretion. The judgment order followed logically from the sanctions order. Mitrofanov offers no basis for revisiting either one.

Rule 59(e) permits a court to alter or amend a judgment. Fed. R. Civ. P. 59(e). Motions for reconsideration – essentially what Mitrofanov's motions request – are considered under Rule 59(e). But motions for reconsideration "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). They do not permit a party to present new evidence or arguments that could have been presented earlier. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Nor do they provide an opportunity for a party to "undo its own procedural failures." *Id.*; *see also Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Whether to grant relief under Rule 59(e) rests with the trial court's discretion. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003).

Mitrofanov identifies no new evidence that might justify revisiting the judgment, nor does he claim any manifest error of law or fact in its entry. The judgment was simply the natural consequence of the sanctions order. The sanctions order had barred Mitrofanov, the plaintiff, from introducing evidence. Because he would have had the burden of proof at trial, *see Grogan v. Garner*, 498 U.S. 279, 289-90 (1991); *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998), and because he would not have been able to meet that burden, judgment in favor of Kapelevich was inevitable. There was no point in holding a trial. Accordingly, the trial date was stricken and judgment was entered. Mitrofanov does not claim its entry was a mistake.

Mitrofanov's real attack is on the sanctions order itself, since vacating that order would require vacating the judgment. But he supplies no reason to undo the sanctions order either.

Rule 16(f)(1)(C) allows a court on its own motion to issue any "just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f) (made applicable by Fed. R. Bankr. P. 7016(a)). One of the sanctions Rule 37(b)(2)(A)(ii) authorizes is an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii) (made applicable by Fed. R. Bankr. P. 7037).

Federal courts have broad discretion in choosing a suitable sanction for a party's violation of a pretrial order. *Michael v. Khan (In re Khan)*, 321 B.R. 709, 711 (Bankr. N.D. Ill. 2005). The Seventh Circuit has not only upheld the authority of bankruptcy courts to sanction parties who violate pretrial orders but has also approved the very sanction imposed here. *See In re Maurice*, 21 F.3d 767 (7th Cir. 1994). A final pretrial order, the court observed in *Maurice*, is a critical tool for "narrowing the issues and expediting the trial." *Id.* at 773. Accordingly, "[w]hen one party fails to comply . . . without justifiable excuse, thus frustrating the purposes of the pre-hearing order, the court is certainly within its authority to prohibit that party from introducing witnesses or evidence as a sanction." *Id.* In fact, that sanction is distressingly common. *See, e.g., Eckert v. Grochocinski*, No. 07 C 6012, 2008 WL 4547224, at *2-3 (N.D. Ill. Apr. 2, 2008); *Khan*, 321 B.R. at 711-12 (citing cases); *People ex rel. Ryan v. Monahan (In re Monahan)*, No. 99 B 2199, 2000 WL 527753, at *2-4 (Bankr. N.D. Ill. May 1, 2000).

Mitrofanov provides no "justifiable excuse" for having violated the final pretrial order here. *Maurice*, 21 F.3d at 773. In his threadbare, nine-sentence motions, he claims that as "an out of state resident" he was "left with no way to pursue the case" once Turin withdrew. He says

he "did not fully comprehend that none of the deadlines outlined in the pretrial order were met." And he adds that because his elderly father had been sick and hospitalized "in late February," he was unable to "deal . . . with this matter properly."

These excuses will not wash. Turin's withdrawal did not leave Mitrofanov with "no way to pursue the case." Turin sought leave to withdraw on January 20, and Mitrofanov had notice of the motion. The pretrial materials were not due until February 16. Mitrofanov therefore knew nearly a month before the due date that he would have no lawyer and would be on his own. Far from having "no way to pursue the case," he could have secured a new lawyer, or he could have represented himself. What he did was nothing. He filed no pretrial materials, and according to the motions he did not retain his current counsel until February 28 or March 1, nearly two weeks after the February 16 deadline.

No more convincing is Mitrofanov's assertion that he failed to understand the deadline had not been met. There was no reason for Turin to have met the deadline: he withdrew two weeks before it arrived. Mitrofanov never denies knowing about (1) the March 9 trial date (for which he himself had pressed), (2) the final pretrial order, (3) the February 16 deadline in the final pretrial order (the deadline was also mentioned in Turin's motion to withdraw), and (4) the potential consequences if that deadline were not met. Meeting it was his responsibility, whether through counsel or on his own. That he no longer had counsel was no excuse. *See Wilson v. Bruce*, 400 F. App'x 106, 109 (7th Cir. 2010) (noting that "[w]hatever benefits [a party] may seek as a pro se litigant, they do not include license to disregard the court's orders").

As for his ailing father, if Mitrofanov's filial obligations were making it difficult for him to fulfill his duties as a litigant, it was incumbent upon him to take some sort of action. Either he

had to find a new lawyer who could take over for Turin and do what needed to be done, or he had to file a motion to extend the deadline before it passed. Mitrofanov did neither. He ignored the proceeding and let the critical deadline slip by. It took him almost two more weeks after that before he obtained new counsel. Not until judgment against him had already been entered did Mitrofanov's new counsel seek any sort of relief.

A final pretrial order narrows the issues and expedites the trial, as *Maurice* noted, but an order of the kind entered here serves other important purposes as well. By requiring each side to reveal to the other the specific evidence he intends to introduce, it avoids the evils of trial by ambush (pretrial discovery is not the only tool for preventing an ambush) and so helps ensure a fair proceeding. By forcing the parties to prepare – to think about their legal theories in advance and select the evidence that will support them – the final pretrial order also increases the likelihood of a thoughtful, careful presentation at trial.

But parties are not the only ones whose preparation the final pretrial order assists. The court is able to prepare as well. And by the same token, the court's preparation is hampered when the parties submit no pretrial materials. Without those materials, the court is left in the dark about the issues for trial (since the pleadings are never more than an imperfect guide) and is unable to anticipate potential evidentiary questions. *See Brown v. Merchant (In re Polo Builders, Inc.)*, Nos. 04 B 23758, 06 A 1176, 2010 WL 3810778, at *1 (Bankr. N.D. Ill. Sept. 24, 2010) (making this point). Mitrofanov's failure to file pretrial materials impaired not only Kapelevich's preparation for trial, it impaired the court's preparation as well.

The bankruptcy court in this district is currently the busiest in the country, with each judge carrying roughly double the national average caseload. Judicial time is in short supply.

The March 9 trial date here was set at Mitrofanov's request three months in advance. Once that date was set, the time reserved for him became unavailable to other litigants. Having invoked this court's processes, it was Mitrofanov's obligation to pursue his claim responsibly and make use of the time set aside for him. Although the final pretrial order gave him notice of what he had to do, when he had to do it, and what would happen if he did not, Mitrofanov neglected to carry out his responsibilities. He had no justifiable excuse for his neglect, and the court was well within its discretion in concluding he must suffer the consequences.

### 3. Conclusion

The motions of Alexander Mitrofanov to vacate the order imposing sanctions and the judgment are denied. An order will be entered consistent with this opinion.

Dated: March 22, 2017

_____
A. Benjamin Goldgar
United States Bankruptcy Judge